**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandpiper Resorts Development Corporation, an Arizona corporation for profit; and Dourian Foster Investments Inc., an Arizona corporation for profit,<br><br>Plaintiffs,<br><br>v.<br><br>Global Realty Investments, LLC, a Nevada limited liability company; Caroline Hartman-Altenbernd and Kelly Altenbernd, husband and wife individually; Toscana Developers, LLC, a Florida limited liability company; Cynthia Estes and John Doe Estes, husband and wife individually; Estes Development Corporation, a West Virginia corporation; Black Corporations 1 through 5; White Limited Liability Companies, 1 through 5,<br><br>Defendants. | No. CV 08-1360-PHX-MHM<br><br>**ORDER** |

Currently before the Court is the Motion to Dismiss (Dkt.#33) filed by Defendants Caroline Hartman-Altenbernd and Kelly Altenbernd, Plaintiffs' Motion for Leave to Serve Defendant Cynthia Estes by Publication; Motion to Deem Service on Estes Development Corporation Valid or in the Alternative to Serve Estes Corporation (Dkt.#42), Plaintiffs' Motion for Hearing on the aforementioned motion (Dkt.#43), and Plaintiffs' Motion for Hearing or Conference re: Plaintiff's Motion for Status Hearing (Dkt.#44). Having

considered these motions and their accompanying papers, the Court issues the following Order.

**I.     Background**

    **A.     The underlying claims for fraud and breach of contract**

Plaintiffs are suing Defendants for breach of contract and fraud that allegedly occurred in the context of a bankruptcy proceeding. As explained by Plaintiffs, the crux of the fraud was that Defendants contracted to purchase certain property from Plaintiffs on an "as is" basis. The property was at that time subject to a bankruptcy proceeding, and court approval was required to lift the protections of the bankruptcy stay and proceed with the sale. The Bankruptcy Judge held a hearing at which Ms. Hartman-Altenbernd's attorney represented to the bankruptcy court that the Defendants were going to perform as promised and purchase the property. On the basis of this assertion, the bankruptcy court lifted the stay to allow the negotiated sale that Plaintiffs and Plaintiffs' creditors relied upon.

Plaintiffs claim to have later learned that the representations made at the bankruptcy hearing were fraudulent. They further state that "[i]t has become clear that Defendants did not intend to close and were concealing the facts that they: [1] did not have the requisite financing in place; [2] did not intend to proceed with the sale if the property appraised at a lower value than the sale price; and [3] had instead planned, and had engaged in discussions regarding, purchase of the property from the mortgage holder after foreclosure once the stay was lifted, at a price substantially below the contract sale price." (Dkt.#42 at 3)

After learning that the property did not sell, the Bankruptcy Judge ordered the parties' attorneys to appear for a hearing to determine whether Defendants' "knew it [the sale] wasn't [going forward] or the lawyers for Global are still representing clients who lied to them." (Dkt.#34 at 4) The Bankruptcy Judge appears to have stated that he believed Defendants committed a fraud on the Court.

    **B.     Attempts to Serve the Altenbernds**

Defendants Toscana and Global (the LLCs through which the Altenbernds operated) were served via their statutory agents. After diligent but unsuccessful efforts were made to serve the Altenbernds within the 120 day deadline, Plaintiffs filed a motion for an extension

of time to serve the Altenbernds. The Court granted this motion on May 21, 2009, giving Plaintiffs 20 additional days from the date of the Order.

On June 8, 2009, Plaintiffs filed an affidavit of service stating that Caroline Hartman-Altenbernd and Kelly Altenbernd had been served on June 5, 2009 by leaving the process with Kelly Altenbernd at the 33rd Avenue Residence that apparently belonged to Mr. Altenbernd's sister, Jamie Lowe.

Plaintiffs explain that after the Court's May 21 Order, they contacted an investigator and process server who was informed of the previous efforts[1] to locate and serve the Altenbernds and instructed to do whatever was necessary to locate the Altenbernds and serve them. Plaintiff's process server discovered two addresses the Altenbernds held in common, the 48th Street Residence and the 33rd Avenue Residence. He also conducted a driver's license search on the Altenbernds in Arizona, Nevada and Florida and obtained a current license with a photo for Mr. Altenbernd. That license listed the current residence of the Altenbernds as the 48th Street Residence. He was unable to obtain a current driver's license for Ms. Altenbernd; however, her expired 2007 license also listed the 48th Street Residence as her current residence.

Plaintiffs had previously attempted to serve the Altenbernds at the 48th Street Residence on November 10, 2008, but they found the home vacant. They also had attempted to locate and serve the Altenbernds via their LLCs. They also had conducted a skip trace to locate the Altenbernds and sent process servers to Nevada. Upon doing a public records search, the private investigator discovered that the 48th Street Residence had been either foreclosed on or deeded back to the bank on September 24, 2008.

---

[1] These efforts are explained at length in Plaintiffs' Motion for an Extension of Time to Serve (Dkt.#21); briefly, they included attempting to serve the Altenbernds at the 48th Street Residence on November 10, 2008, attempting to locate and serve the Altenbernds via their LLCs, conducting a skip trace to locate the Altenbernds, and sending process servers to Nevada.

1   A further public records search showed the 33rd Avenue Residence belonged to Mr.
Altenbernd's sister, Jamie Lowe. The investigator discovered that both Mr. and Ms.
Altenbernd had been personally served at the 33rd Avenue Residence (in an unrelated Justice
Court case) on March 22, 2009. The investigator also located and interviewed Mr.
Altenbernd's ex-wife, who stated that she had seen him approximately eight months earlier
at a supermarket in the company of his older sister, Jamie Lowe. Based on this information,
the investigator decided to focus on serving the Altenbernds at the 33rd Avenue Residence.

On June 3 and June 4, the investigator and his associate "staked out" the 33rd Avenue
Residence. They spoke to a neighbor who confirmed that Ms. Lowe's brother lived in the
33rd Avenue home and went on to say that Kelly Altenbernd had left the 33rd Avenue
Residence earlier that morning to take his wife to the hospital because she was having
stomach cramps. The investigator and his associate waited several hours for their return, but
were unsuccessful. They decided to return the next day.

On June 5, the investigator and his associate approached the door of the 33rd Avenue
Residence. The door was answered by a man who the investigator identified as Kelly
Altenbernd based on his driver's license photo. The investigator asked if the man was Kelly
Altenbernd. The man responded, "Who wants to know?" The investigator told the man that
he had service for Kelly Altenbernd and Caroline Hartman-Altenbernd. The man then said,
"They don't live here," and began to shut the door. The investigator showed the man a copy
of the driver's license photo and stated that he clearly was Mr. Altenbernd and that he looked
exactly like the photo. The investigator stated under oath that he believes that the man at the
door was the man in Kelly Altenbernd's driver's license photo. As the man attempted to
close the door, the investigator dropped the service at the man's feet.

After serving the man at the 33rd Avenue Residence, the investigator and his associate
immediately went to another neighbor's home and asked the neighbor, Alice Estes, if she
knew whether Jamie Lowe's brother, Kelly Altenbernd, lived next door. The neighbor
confirmed that they did.

- 4 -

1  The Altenbernd Defendants challenge this service and move to dismiss this case based on insufficient service of process. (Dkt.#33)

The Altenbernds claim that the June 5, 2009 service was invalid because it was not Kelly Altenbernd but a friend of the Lowe's, Mike Gooler, who answered the door. (Dkt.#33 at 5) According to the Altenbernds, Kelly Altenbernd lived at the Lowe's 33rd Avenue Residence only from November 2007 until March 2008 and Caroline Hartman-Altenbernd, apart from occasional overnight houseguest visits, has never resided at the 33rd Avenue Residence. (Dkt. #33) They further affirm that neither has any intention of owning, renting, or maintaining a home in Arizona and that they have purchased real property in Los Angeles County, California (although Plaintiffs' search of real property was unable to locate any such property). (Dkt.#33) They further state that they sold the 48th Street Residence "in November 2008," although as mentioned above, the private investigator discovered that the 48th Street Residence had been either foreclosed on or deeded back to the bank on September 24, 2008.

Plaintiffs outline a number of other attempts to locate and serve process on the Altenbernd Defendants, including contacting the former counsel for their LLCs, the Altenbernd's bankruptcy attorneys, and former counsel for the Altenbernds in this action. (Dkt.#34) However, all counsel refused to identify the Altenbernds' present address, citing concerns about client confidentiality and ethical rules. (Dkt.#34) However, Mr. Ward, the former counsel for Toscana, LLC, stated that he had forwarded on the service of process to "Caroline" as a courtesy before immediately withdrawing as a statutory agent because he no longer had any relationship with Toscana. (Dkt.#34) Moreover, given that the Altenbernds' counsel in the present action filed the Motion to Dismiss for insufficient service of process on June 25, 2009, before withdrawing from the case, it is clear that the Altenbernds necessarily have received actual notice of this action. (Dkt.#34)

## II. Motion to Dismiss (Dkt. #33)

The Altenbernd Defendants move to dismiss the complaint, arguing that alleged June 5, 2009 service of process was insufficient. Defendants also argue that dismissal is proper because they contend that Plaintiffs failed to effectuate service upon them by June 9, 2009 (the deadline for service according to the Court's prior Order). Specifically, they argue that (1) the Lowe 33rd Avenue Residence is not the Altenbrands' dwelling house or usual place of abode and (2) that the summons and complaint were not left with a person who resides at the Lowe 33rd Avenue Residence.

Plaintiffs respond that the June 5, 2009 service was valid and point to their investigator's affidavit to refute Defendants' claims that the June 5 service was accomplished on Mike Gooler, not Kelly Altenbernd. Moreover, they argue in the alternative, that because the Altenbernds received actual notice of the lawsuit (as evidenced by their motion to dismiss), the "broad and flexible" requirements of Rule 4 are met. In the alternative, Plaintiffs request an evidentiary hearing so that the Court may better evaluate the credibility of the conflicting accounts. Finally, they request that the Court allow them to effectuate service by publication as provided for in Arizona Rule of Civil Procedure 4(n), citing Federal Rule of Civil Procedure 4(e)(1), which permits service by any method set forth in the rules of the state of the District Court's location).

However, an evidentiary hearing appears unnecessary. Assuming without deciding that the Altenbernds are correct, and the attempted service on June 5 did not, in fact, effectuate service upon Kelly Altenbernd, the Court is nonetheless convinced that based on Plaintiffs' extraordinary efforts to serve the Altenbernds, service by publication appears appropriate, particularly given that the Altenbernds have necessarily received actual notice of the pending matter, as evidenced by their motion to dismiss. A number of Federal courts have noted that "[t]he rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." TRW, Inc. v. Derbyshire, 157 F.R.D. 59, 60 (D. Colo. 1994); see also Direct Mall Specialists, Inc. v. Eclat Computerized Technologies,

Inc., 840 F.2d 685, 688 (9th Cir. 1988) (explaining that "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint"). Accordingly, Plaintiffs will have 45 days from the date of this Order to effectuate service by publication according to the ArizonaRules of Civil Procedure upon the Altenbernd defendants. The Altenbernd Defendants' motion to dismiss is denied.

**III.    Motion for Leave to Serve by Publication on Defendant Estes (Dkt.#42)**

On October 8, 2009, Plaintiffs filed an amended complaint[2] adding Cynthia Estes and Estes Development Corporation as Defendants. Plaintiffs have cited a similar history of attempting to serve Defendant Cynthia Estes. Specifically, they tracked Ms. Estes to a residence in West Virginia. The door was answered by Ms. Estes' mother, who stated that Ms. Estes did not live in West Virginia, but South Carolina, and that the process server should return later. However, when the process server returned, the mother refused to accept process or to give the process server Ms. Estes' address. Instead, the mother stated that Ms. Estes had asked her to give the process server the name and address of her Florida attorney, Greg Ward, and stated that he would accept service of the subpoenas on Ms. Estes' behalf.[3]

However, voice mail messages to Mr. Ward were not returned. A number of emails were also sent, but went unanswered for over a week until Mr. Ward responded that he could not accept service of process at that time, but that he would check with his client and let Plaintiffs know. Plaintiffs' counsel then spoke on the telephone with Mr. Ward several times. Ultimately, Mr. Ward responded that he could not accept service and that Plaintiffs should try to contact Ms. Estes directly. However, he gave Plaintiffs a telephone number that he identified as belonging to Ms. Estes. When Plaintiffs' counsel called, the answering

---

[2] This amended complaint was filed as of right under Federal Rule of Civil Procedure 15(a)(1)(A) because no responsive pleading had been served. A Motion to Dismiss is not a responsive pleading for purposes of this rule. Mayes v. Leipziger, 729 F.2d 605, 607-08 (9th Cir. 1984).

[3] Plaintiffs initially tried to serve a subpoena on Ms. Estes and a subpoena duces tecum on Estes corporation..

1 | machine identified the number as belonging to Ms. Estes; however, she never responded to
2 | the messages that were left.

3 | Plaintiffs attempted to serve Ms. Estes at a Florida Residence; however the man who
4 | answered the door explained that he had purchased the residence from Ms. Estes in 2008 and
5 | that she no longer resided there. They also attempted to serve Ms. Estes at here South
6 | Carolina residence; however, their process server found that she no longer resided at this
7 | address either.

8 | Plaintiffs also attempted to serve Ms. Estes as the statutory agent for Estes
9 | Development, a West Virginia Corporation; however, the address listed for Ms. Estes as the
10 | agent for Estes Development is a postal office box, making personal delivery to the agent
11 | impossible. The Estes corporate filings also identify the West Virginia Residence as Estes
12 | Development's Principal Office Address. However, as explained above, this residence
13 | apparently belongs to Ms. Estes' mother, and attempts to reach her there were unsuccessful.
14 | As provided by West Virginia Code § 31D-5-504(c), Plaintiff served the subpoena on the
15 | West Virginia Secretary of State, which accepted service on behalf of Estes Development on
16 | October 16, 2009. Having determined that attempts to serve the Amended Complaint and
17 | Summons would be futile, Plaintiffs served Estes Development by delivering a copy of the
18 | Summons and Amended Complaint to the West Virginia Secretary of State, which accepted
19 | service on October 28, 2009.

20 | Plaintiffs request leave to serve Ms. Estes by publication pursuant to Fed. R. Civ. P.
21 | 4(e)(1) and Ariz. R. Civ. P. 4.2(f). They point out that they have attempted to serve her in
22 | three different states, have attempted to contact her via her mother and her attorney, and have
23 | left multiple messages on her cell phone. It appears that Plaintiff has been diligent in
24 | attempting to serve Ms. Estes; moreover, it appears that Ms. Estes is aware that an action has
25 | been filed against her based on the cell phone messages and the messages left with her
26 | mother. As such, Plaintiffs' request to effectuate service upon Ms. Estes through publication
27 | is granted (Dkt.#42).

It appears that Plaintiffs have complied with West Virginia law regarding service upon Estes Corporation and that service has been effectuated by serving West Virginia's Secretary of State. According to the West Virginia Code, service will be "deemed sufficient if return receipt is signed by an agent or employee of the corporation, or the registered or certified mail sent by the secretary of state is refused by the addressee and the registered or certified mail is returned to the secretary of state, or to his or her office, showing the stamp of the United States postal service that delivery has been refused . . . ." W. Va. Code § 31D-5-504(c). Accordingly, Plaintiffs' Motion to Deem Service on Defendant Estes Development Corporation Valid or in the Alternative to Serve Estes Development Corporation by Publication (Dkt.#42) is granted to the extent that it deems service valid and denied to the extent that it seeks leave to serve Estes Corporation by publication.

**IV.     Other Pending Motions**

Given the above rulings, Plaintiffs' subsequent Motion for an Expedited Hearing on Motion for Leave to Serve by Publication and on Motion to Deem Service on Defendant Estes Development Corporation Valid or in the Alternative to Serve Estes Development Corporation by Publication (Dkt.#43) now appears to be moot; accordingly, it is denied as moot.

Similarly, Plaintiffs' Motion for a Status Hearing (Dkt.#44), filed the same day as the prior motion, to resolve any outstanding procedural issues, also appears to be mooted by the above-mentioned determinations. Accordingly, it is similarly denied as moot.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendants' Motion to Dismiss (Dkt.#33)

**IT IS FURTHER ORDERED** permitting Plaintiffs to serve the Altenbernds by publication in accordance with the Arizona Rules of Civil Procedure no later than 45 days from the date of this Order.

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion for Leave to Serve Defendant Cynthia Estes by Publication (Dkt.#42) no later than 45 days from the date of this Order in accordance with the Arizona Rules of Civil Procedure.

1     **IT IS FURTHER ORDERED** granting Plaintiffs' Motion to Deem Service on Estes Development Corporation Valid (Dkt.#42).

    **IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Hearing on the aforementioned motion (Dkt.#43).

    **IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Status Hearing (Dkt.#44).

    DATED this 21st day of December, 2009.

_____
Mary H. Murguia
United States District Judge