UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SANDPIPER RESORTS DEVELOPMENT CORPORATION, *et al.*,<br>        Plaintiffs,<br><br>        vs.<br><br>GLOBAL REALTY INVESTMENTS, LLC, *et al.*,<br>        Defendants. | 2:08-cv-01360 JWS<br><br>**ORDER AND OPINION**<br><br>[Re:  Motions at Docket 221, 225, 227, 228, 229, 230, and 269] |

## **I.  MOTIONS PRESENTED**

At docket 221, third-party defendant Mohr Hackett Pederson Blakely & Randolph, P.C. ("Mohr Hackett") moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment on the third-party claims against it. Defendants Cynthia Estes ("Estes") and Estes Development Corporation ("Estes Development"; collectively "Estes Defendants"), oppose the motion at docket 249. Mohr Hackett's reply is at docket 265.

At dockets 225, 227, 228, 229, and 230, the Estes Defendants move for summary judgment on various claims asserted against them. Plaintiffs Sandpiper Resorts Development Corporation ("Sandpiper") and Dourian Foster Investments

("Dourian Foster"; collectively "plaintiffs") filed a consolidated response at docket 241. Defendants' reply at dockets 260, 261, 262, and 264.

At docket 269, plaintiffs move to strike Mohr Hackett's controverting statement of facts in opposition to plaintiffs' statement of facts. Mohr Hackett opposes the motion at docket 272. Plaintiffs' reply is at docket 278.

Oral argument was held on August 1, 2012.

## II.  BACKGROUND

This lawsuit arises out of the attempted sale of two parcels of land. Sandpiper was the owner of the Toscana Villas–a partially completed townhouse development in La Paz County, Arizona. The Toscana Villas property was encumbered by two notes and deeds of trust in favor of Point Center Financial ("Point Center"). Dourian Foster was the owner of an adjacent 25-acre parcel of land known as the Toscana Estates. The Toscana Estates property was encumbered by notes and deeds of trust in favor of Ronald Gayman, an individual. Damin Paige Dourian ("Dourian") was the President and CEO of Sandpiper and principal of Dourian Foster.

Sandpiper filed for Chapter 11 bankruptcy in January 2007. As part of Sandpiper's bankruptcy plan, the Toscana Villas property was to be sold at auction. Two months before the auction, representatives of Sandpiper met with Caroline Hartman-Altenbernd ("Hartman")–managing member of Global Realty, LLC ("Global") –to discuss Global's purchase of both the Toscana Villas and the Toscana Estates. Global retained Mohr Hackett to assist with Global's acquisition.

On August 24, 2007, Sandpiper and Global entered into a contract under which Global agreed to purchase the Toscana Villas for $6,950,000. By a separate contract, Global agreed to purchase the Toscana Estates for $13,320,000. Toscana Developers, LLC ("Toscana Developers") was to be the assignee of Global's rights under each contract. Estes Development was, at least at one point, the managing member of Toscana Developers, and plaintiffs allege that Estes Development was the primary

source of funding for the purchases.  Plaintiffs also allege that Estes was Hartman's partner.[1]

The purchases were supposed to close on October 8, 2007.  On October 3, 2007, a loan broker acting on behalf of Global contacted Point Center–the holder of the loan on the Toscana Villas–to gauge its interest in lending purchase funds to Global.[2]  Point Center therefore became aware that Global had not acquired funding for the planned purchases.

On October 5, 2007, the bankruptcy court held a status hearing regarding the sale of the properties.  At that hearing, Joe Cotterman, Point Center's lawyer, stated as follows:

> The much bigger concern is over the past week the principal of the buyer, I believe it is Ms. Hartman, who signed the purchase documents, and forgive me, I can't remember her name, but the principal representative of her financing source, paid a personal visit to [Point Center] and by the end of that visit the financing source said you know, we took another look at the property and appraisals and this doesn't support it.  We're done.  We are out of this deal, and then in the following couple days, [Point Center] has gotten at least two inquiries from other financing sources.[3]

One of Global's attorneys from Mohr Hackett, Walid Zarifi ("Zarifi"), stated that Global was ready to go through with the purchase and that he was unaware of anything that would hold up the sale.  At the parties' request, the bankruptcy judge entered an order approving the sale and postponing foreclosure; the sale was to close no later than October 11, 2007.

On October 8, 2007, Hartman received an appraisal valuing the Toscana Villas at $5,600,000.  Hartman forwarded the appraisal to Thomas Axelsen ("Axelsen") at Mohr Hackett.  On October 9, 2007, Global informed Sandpiper that it was not going through with the sale.  On October 12, 2007, Point Center foreclosed one of its two loans on the

---

[1] *See, e.g.*, doc. 242-1 at 220–221.

[2] *See* doc. 242-1 at 310.

[3] *Id.* at 335.

-3-

Toscana Villas. It foreclosed the second on April 4, 2008. Global continued to negotiate with Point Center regarding the purchase of the Toscana Villas and continued to negotiate with Dourian regarding the purchase of the Toscana Estates.

On November 15, 2007, the bankruptcy court held a status hearing. At the hearing, the judge stated that "Global, *and its assignees* ha[ve] been representing to the court and all other parties that they were going to close on this sale and we bent over backwards to assist them, and then they reneged at the last minute, which then resulted in the valuable property going to the foreclosure sales."[4] The judge opined that "either the lawyers [from Mohr, Hackett] knew that it wasn't [going to close] or the lawyers for Global are still representing a client who lied to them. One of the two, and I see all kinds of ethical violations here, not to mention damages to [Sandpiper]."[5] The judge stated that "this buyer knew exactly what it was doing and led everybody down the road until it was too late to save the property and thereby cost [Sandpiper], its creditors and all these attorneys their fees."[6] At the same hearing, Michael Carmel, Sandpiper's attorney, stated his understanding that "in the days before [the October 5] hearing" Estes met with Hartman in person "and said . . . this is a dead deal here."[7]

Plaintiffs filed a complaint in federal court on July 25, 2008. Plaintiffs named Global, Hartman, Hartman's husband, Kelly Altenbernd, and Toscana Developers. Each of those defendants defaulted. On October 8, 2009, plaintiffs amended their complaint to include the Estes Defendants. The Estes Defendants initially defaulted but default was set aside. The complaint asserts the following claims against the Estes Defendants: fraud, negligent misrepresentation, piercing the corporate veil, a violation of 11 U.S.C. § 363(n), and aiding and abetting.

---

[4] Doc. 242-1 at 268 (emphasis added).

[5] *Id.* at 269.

[6] *Id.* at 271.

[7] *Id.* at 279.

On July 19, 2011, the Estes Defendants filed a third-party complaint naming Mohr Hackett. The third-party complaint seeks common law indemnification.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[11] The reviewing court may not weigh evidence or assess the credibility of witnesses.[12] The burden of persuasion is on the moving party.[13]

## IV.  DISCUSSION

Because "a third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto,"[14] the court will first consider the Estes Defendants' motions for summary judgment.

---

[8] Fed. R. Civ. P. 56(a).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10] *Id.*

[11] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[12] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[14] *Stewart v. Am. Int'l Oil & Gas*, 845 F.2d 196, 199 (9th Cir. 1988).

**A. Motion at Docket 225–11 U.S.C. § 363(n)**

The Estes Defendants argue that they are entitled to summary judgment on plaintiffs' 11 U.S.C. § 363(n) claim.  Their arguments appear to have merit, and in any event plaintiffs are withdrawing that claim against the Estes Defendants.[15] Consequently, the Estes Defendants are entitled to summary judgment on that claim.

**B. Motions at Dockets 227& 230–Fraud & Negligent Misrepresentation**

The Estes Defendants argue that they did not make any representations to plaintiffs and, therefore, that they cannot be liable for fraud or negligent misrepresentation.  The Estes Defendants note that the only representations that Dourian identified at her deposition were made by attorneys from Mohr Hackett–who represented Global.

Plaintiffs respond that the "Estes Defendants were involved in every important aspect[] of the[] real estate transactions, including controlling the intended purchasing entity [Toscana Developers] and being responsible for obtaining the financing for the transaction."[16]  Based on the Estes Defendants' alleged involvement, plaintiffs argue that it is appropriate to attribute Axelsen and Zarifi's representation that the transactions were ready to close, and other representations, to the Estes Defendants.

**1. Relevant Legal Standards**

The elements of common law fraud are "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its

---

[15]Doc. 241 at 2 n.1.

[16]Doc. 241 at 23.

truth; (8) the right to rely on it; (9) his consequent and proximate injury."[17] "Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence."[18]

The tort of negligent misrepresentation is defined in Arizona as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."[19] In transactions involving the sale of real property, "the buyer and the seller have duties to each other to disclose facts that are material to the transaction."[20] For example, a "buyer cannot present himself as a ready, willing, and able buyer if he knows that there is a significant risk that the deal will never close because of his inability to perform."[21]

**2. Analysis**

Plaintiffs argue that the Estes Defendants' position "ignores all of the facts that reflect the interactions of Global/Hartman and [the Estes Defendants], and both of them with [Toscana Developers]."[22] They contend that their statement of facts "establish[es] that there are at least questions of fact regarding the validity of . . . Zarifi's affirmative comments to the [Bankruptcy Court] and whether the [buyers] adequately disclosed all

---

[17] *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz Ct. App. 1998) (internal quotations omitted).

[18] *Id.* (internal quotations omitted).

[19] *St. Joseph's Hosp. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Arizona 1987) (quoting Restatement (Second) of Torts § 552).

[20] *Lombardo v. Albu*, 14 P.3d 288, 290 (Ariz. 2000).

[21] *Id.*

[22] Doc. 241 at 22.

other material facts to the sellers."[23]  Local Rule 56.1 requires that "[m]emoranda of law filed in support of or in opposition to a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies."[24] Plaintiffs do not cite to any specific paragraph in their statement of facts describing the interactions between Global or Hartman and the Estes Defendants that would give rise to an inference that the Estes Defendants supplied false information or were responsible for concealment of a plan to renege on the purchase.  Plaintiffs' statement of facts repeatedly refers to "Global/Toscana Developers" and then cites to documents that refer solely to Global or Hartman.[25]

On the other hand, plaintiffs have presented evidence that the Estes Defendants were involved in obtaining funding for the purchases.[26]  For example, plaintiffs produced a letter from Liberty One Lending to Cindy Estes, dated October 10, 2007, acknowledging that they were in receipt of Estes' loan request to develop the Toscana Estates.[27]  Plaintiffs have also produced unsigned service agreements between Cindy Estes and Estes Development and Pathfinder Commercial Lending ("Pathfinder") which relate to potential loans on both parcels.[28]  An email from Kent Sullivan at Pathfinder to Estes states that Sullivan "look[ed] forward to getting these two properties submitted,

---

[23]*Id.*

[24]LRCiv 56.1(e).

[25]*See, e.g.*, doc. 242 ¶ 14 (referring to "Global/TD's obligation to deposit earnest money" and then citing to an amended contract that does not refer to Toscana Developers); *id.* ¶ 24 (stating that "a loan broker representing Global/Toscana Developers contacted Point Center . . . and inquired about Point Center's interest in lending purchase funds to Global/Toscana Developers" and citing an email that refers only to Hartman).

[26]*See, e.g.*, doc. 242-1 at 438.

[27]Although this letter was written after the transactions were terminated, its substance implies an ongoing relationship.

[28]*Id.* at 466, 473.

-8-

approved and funded for you."[29]  There is also evidence that Estes and Hartman were in contact and discussed the purchase contracts.[30]  Other evidence suggests that Estes and Hartman made a joint effort to secure funding.[31]  From this evidence it is clear that the Estes Defendants were involved in attempting to obtain financing for the Toscana Villas and Toscana Estates transactions.  Viewed in the light most favorable to plaintiffs, the evidence supports plaintiffs' theory that the Estes Defendants were interested in purchasing both parcels, after the Toscana Villas foreclosure, at a lower price than had been negotiated.

The issue is therefore whether evidence which, when viewed in the light most favorable to plaintiffs, suggests that the Estes Defendants had a crucial role in securing financing for the purchase of the Toscana Villas and the Toscana Estates, that they would be guarantors of certain loans, and that they had a controlling interest in the potential assignee of the sales contracts is enough to support plaintiffs' fraud and negligent misrepresentation claims.

Plaintiffs have not produced evidence that the Estes Defendants made any specific representation or influenced the representations of Global or its representatives. Nor have plaintiffs cited any authority for the proposition that misrepresentations of one actor can be imputed to another and aside from a conclusory assertion, have not supported their contention that the Estes Defendants', as owners of a controlling interest in the potential assignee of the land sales contracts, owed plaintiffs any duty. Fraud, in particular, may not be established by speculative or inconclusive evidence.[32] The evidence that plaintiffs offer in support of their fraud and misrepresentation claims is both speculative and inconclusive.

---

[29]Doc. 242-2 at 39.

[30]*Id.* at 41.

[31]*See, e.g.*, *id.* at 98.

[32]*Enyart*, 985 P.2d at 562.

Even though circumstantial evidence can support a claim of fraud,[33] evidence that Toscana Developers or the Estes Defendants were potential assignees of the contract and sought to secure funding for the purchase does not give rise to an inference that they were responsible for Global or its representatives' representations. Even if the Estes Defendants were as involved in the transactions as plaintiffs' evidence tends to show, that evidence does not support an inference that *they*, as opposed to Hartman or Global, were responsible for the misrepresentations made to plaintiffs and the bankruptcy court. The Estes Defendants are entitled to summary judgment on plaintiffs' fraud and misrepresentation claims.

**C. Motion at Docket 228–Aiding and Abetting**

Plaintiffs maintain that the evidence establishes that the Estes Defendants aided and abetted Global or Hartman's fraud, breach of the duty of good faith and fair dealing, and negligent misrepresentation. "A claim for aiding and abetting a tort requires proof that (1) the primary tortfeasor has committed a tort causing injury to the plaintiff; (2) the defendant knew the primary tortfeasor breached a duty; (3) the defendant substantially assisted or encouraged the primary tortfeasor in the breach; and (4) a causal relationship exists between the assistance or encouragement and [the] breach."[34]

The parties debate whether Arizona courts would recognize a claim for aiding and abetting negligence or breach of contract. It is unnecessary to resolve that dispute. Plaintiffs' evidence is insufficient to establish that the Estes Defendants "substantially assisted or encouraged the primary tortfeasor [Global or Hartman] in the breach."[35] Plaintiffs argue that because Global, Hartman, and Toscana Developers defaulted, and all allegations against them are deemed admitted, the only issue is whether the Estes Defendants were involved with Toscana Developers or Global. Even assuming that

---

[33]*Premier Fin. Servs. v. Citibank*, 912 P.2d 1309, 1314 (Ariz. Ct. App. 1995).

[34]*Sec. Title Agency v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008).

[35]*Id.*

there was a valid assignment, there is no evidence that Global's duties under the contract were delegated to Toscana Developers. If the right to Sandpiper's performance under the contract was assigned to Toscana Developers without a corresponding delegation of Global's duties, then Toscana Developers could not have breached any duty to plaintiffs. That is not altered by the fact that Toscana Developers defaulted on plaintiffs' claims against it.

Finally, viewing plaintiffs' evidence in the light most favorable to them, evidence of the Estes Defendants' involvement in the attempted purchase of the Toscana Villas and Toscana Estates, and evidence that Hartman and the Estes Defendants continued to negotiate to purchase the property after Point Center foreclosed, does not constitute evidence that the Estes Defendants substantially assisted or encouraged Global or Hartman in their respective breaches. While in some cases substantial assistance may be inferred from the circumstances,[36] here, the circumstances do not give rise to such an inference. Summary judgment in defendants' favor is therefore appropriate on plaintiffs' aiding and abetting claim.

**D. Motion at Docket 229–Piercing the Corporate Veil**

Piercing the corporate veil is not a stand alone legal claim.[37] Because plaintiffs' evidence is insufficient to support their direct claims against the Estes Defendants, piercing Estes Development's corporate veil with respect to those claims would serve no purpose. However, plaintiffs also allege a veil-piercing claim with respect to Toscana Developers. The question then becomes whether Toscana Developers' corporate veil should be pierced for purposes of imposing liability on the Estes Defendants.

Although the parties cite West Virginia and Florida veil-piercing law in their briefs, "[i]n determining whether alter ego liability applies, [federal courts] apply the law of the

---

[36] *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons*, 38 P.3d 12, 23, 27 (Ariz. 2002).

[37] *See Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1971).

forum state."[38]  Under Arizona law, it is not established that veil-piercing can be employed in the context of a limited liability company.  Assuming it can, "[a] corporate entity will be disregarded, and the corporate veil pierced, only if there is sufficient evidence that 1) the corporation is the alter ego or business conduit of a person; and 2) disregarding the corporation's separate legal status is necessary to prevent injustice."[39]  "If a corporation was formed or is employed for fraudulent purposes then clearly the corporate fiction should be disregarded."[40]

"[A]lter-ego status . . . exist[s] when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist."[41]  Factors bearing on this question include: failure to maintain corporate formalities; undercapitalization; commingling of corporate and personal finances; plaintiff's lack of knowledge about a separate corporate existence, and diversion of corporate property for personal use.[42]

### 1. Toscana Developers

The Estes Defendants argue that Toscana Developers was created "in the event that Global . . . was successful in obtaining a funding commitment that would then be used to purchase the Toscana Villas and Toscana Estates."[43]  Defendants' argument that Toscana Developers was created to accommodate a contingency is not a sufficient basis for summary judgment.  It is equally plausible that Toscana Developers was

---

[38]*In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010).

[39]*Loiselle v. Cosas Management Group, LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010) (internal quotations and citations omitted).

[40]*Dietel*, 492 P.2d at 457.

[41]*Id.*

[42]*See Deutsche Credit Corp. v. Case Power & Equipment Co.*, 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994).

[43]Doc. 229 at 4.

-12-

maintained "as a mere shield."[44] The Estes Defendants argue further that there is no evidence that Toscana Development was formed for a fraudulent purpose. The problem with the argument at this juncture is that default was entered against Toscana Developers and fraud was one of the claims upon which it defaulted.[45] At the very least that creates an issue of material fact as to whether Toscana Developers was employed for a fraudulent purpose.

Plaintiffs have produced evidence that Estes Development was the 91% owner of Toscana Developers and that Estes Development was, at least at some point, managing member. Plaintiffs have also produced evidence that corporate formalities were ignored. In the aggregate, plaintiffs have shown that there is an issue of material fact as to whether Toscana Developers was the alter ego of Estes Development.

**2. Estes Development**

**a. Alter ego**

With respect to Estes Development, plaintiffs have produced evidence that Estes is the sole owner of Estes Development, that it has no books or records, that Estes has meetings with herself,[46] that she does not keep minutes of those meetings and that Estes Development does not have an office, a phone, a web page, or an email address. Plaintiffs' evidence that Estes Development has disregarded corporate formalities is sufficient to create an issue of material fact as to whether Estes Development is Estes' alter ego.

---

[44]*Dietel*, 492 P.2d at 457.

[45]Toscana Developers was served through its registered agent, Greg Ward, who kept all of Estes Development's books and records, and with whom Estes was personally familiar. Doc. 242-1 at 363. Toscana Developers did not respond to plaintiff's complaint, default was entered, and Toscana Developers has not moved to set aside the default.

[46]Doc. 242-1 at 362.

### b. Necessary to prevent injustice

The second prong of the test in Arizona requires that veil-piercing be necessary to prevent injustice. The Estes Defendants urged the court at oral argument to apply the standard in *Amfac Foods v. Int'l Systems*, an opinion from the Oregon Supreme Court. In that case, the court held that in order to pierce a corporate veil, "the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder."[47] The "improper conduct" described is equivalent to the factors supporting alter ego status under Arizona law. The *Amfac* court also held that assuming "improper conduct by the shareholder exercising control over the corporation, the plaintiff must also demonstrate a relationship between the misconduct and the plaintiff's injury."[48]

It is not necessary to specifically adopt the rule in *Amfac* because a similar requirement is implied by the "necessary to prevent injustice" prong of the Arizona test. It can never be unjust to uphold the corporate form *unless* there is evidence that the shareholder upon whom liability would be imposed was involved in the plaintiff's injury. Toscana Developers' default has established, at least for purposes of the pending motion, that Toscana Developers was formed for the purpose of engaging or did engage in fraud which injured plaintiffs. On the other hand, the second prong is not met with respect to piercing the veil of Estes Development, because there is no evidence that Estes Development was formed for a fraudulent purpose or directly engaged in fraudulent conduct.

---

[47] 654 P.2d 1092, 1101 (Or. 1982).

[48] *Id.* at 1103.

**E. Motion at Docket 221–Third-Party Liability**

Because the court has concluded that summary judgment is appropriate in the Estes Defendants' favor on all of the direct claims asserted against them, there is no basis for third-party liability to be imposed on Mohr Hackett.

**F. Motion at Docket 269–Motion to Strike**

Because the court has concluded that there is no basis for third-party liability without relying on Mohr Hackett's controverting statement of facts, the motion at docket 269 is moot.

**G. Lack of Damages**

The Estes defendants contend plaintiffs could have suffered no damages as a result of the Estes defendants' conduct with respect to any claim arising from the failure to close the sale of the Toscana Villas property. On all plaintiffs' claims, save those based on piercing a corporate veil, the court need not consider the argument, because the court finds in favor of the Estes' defendants on other grounds. With respect to the veil piercing claim, the argument fails, because inherent in Toscana Devlopers' default is the proposition that Toscana Developers' conduct proximately caused at least some injury to plaintiffs.

## V.  CONCLUSIONS

For the reasons above, Mohr Hackett's motion at docket 221 for summary judgment is **GRANTED**.

The Estes Defendants' motion at docket 225 for summary judgment with respect to plaintiffs' 11 U.S.C. § 363(n) claim is **GRANTED**. The Estes Defendants' motion at docket 227 for summary judgment with respect to plaintiffs' negligent misrepresentation claim is **GRANTED**. The Estes Defendants' motion at docket 228 for summary judgment with respect to plaintiffs' aiding and abetting claim is **GRANTED**. The Estes Defendants' motion at docket 230 for summary judgment with respect to plaintiffs' fraud claim is **GRANTED**.

The Estes Defendants' motion at docket 229 for summary judgment with respect to plaintiffs' veil-piercing claim is **GRANTED** in part and **DENIED** in part as follows: It is denied as it pertains to piercing Toscana Developers corporate veil to impose liability on Estes Development. It is granted as it pertains to piercing Estes Development's corporate veil to impose liability on Cynthia Estes.

Plaintiffs' motion at docket 269 to strike Mohr Hackett's controverting statement of facts is **DENIED** as moot.

DATED this 6th day of August 2012.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE